**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PATSY WACHENSCHWANZ** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:12-CV-1037** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **DOLGENCORP, LLC,** | : | **Magistrate Mark R. Abel** |
| | : | |
| **Defendant.** | : | |

## OPINION AND ORDER

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment as to

Patsy Wachenschwanz ("Motion for Summary Judgment") (Doc. 30), and Defendant's

Objections and Motion to Strike the Declaration of Patsy Wachenschwanz Offered by Plaintiff in

Support of Her Opposition to Defendant's Motion for Summary Judgment ("Motion to Strike").[1]

(Doc. 58).  For the reasons stated below, Defendant's Motion to Strike is **GRANTED** in part and

**DENIED** in part, and Defendant's Motion for Summary Judgment is **GRANTED**.


## II. BACKGROUND

### A. Factual Background

Plaintiff, Patsy Wachenschwanz, ("Plaintiff" or "Wachenschwanz") was employed by

Dollar General ("Defendant" or "Dollar General") from August 2002 through May 2011.  She

---

[1] Defendant's Motion to Strike deals directly with evidence found in Plaintiff's Declaration (Doc. 34), which was used in support of Plaintiff Patsy Wachenschwanz's Memorandum in Opposition to Defendant Dolgencorp, LLC's Motion for Summary Judgment.  (Doc. 49).  Because this Court's order on Defendant's Motion to Strike has a direct impact on the evidence this Court may consider in deciding Defendant's Motion for Summary Judgment, the Court's Order on the Motion to Strike precedes the Court's Order on the Motion for Summary Judgment. *See infra*, Section IV.A.

started as a Sales Associate at the Dollar General in The Plains, Ohio, where she was eventually promoted to Assistant Store Manager. Wachenschwanz was promoted to Store Manager for the Dollar General located in Athens, Ohio in July 2003. She worked as the Store Manager for the Dollar General in Nelsonville, Ohio for six months in 2006, but spent the rest of her employment with Dollar General as the Store Manager for the Athens, Ohio location ("the Store" or "Dollar General"). Wachenschwanz voluntarily resigned in May 2011.

Dollar General is a retailer of basic consumable goods, seasonal items, home products, and apparel. Dollar General maintains approximately 9,811 stores throughout 38 states. Each store operates under the same job hierarchy, led by the Store Manager, who is the highest level supervisory personnel. Dollar General stores typically are also staffed with an Assistant Store Manager ("ASM"), a Lead Sales Associate ("LSA" or "third key"), and various Sales Associates. Of those employees, the Store Manager is the only salaried employee. Store Managers report to a District Manager ("DM"), who is usually responsible for overseeing 15 to 25 stores. There were six employees who worked below Wachenschwanz at her Dollar General location, two full-time employees, and four part-time employees. During her time as a Store Manager, Wachenschwanz reported to two different DMs.

The first DM, Rich McCulley, made thirty-minute visits to the Store every three to four months. Plaintiff and McCulley spoke on the phone every three to four months. McCulley occasionally sent district-wide voicemails to all of the managers for whom he was responsible. Conversely, Terry Grierson, Wachenschwanz's DM from 2007 through 2011, visited the Store once a week, often staying for three to four hours. During his visits, Grierson inspected the store and talked to Wachenschwanz about the Store's performance. Grierson called Plaintiff for brief conversations a few times per week. Additionally, Grierson communicated with his Store

Managers through weekly conference calls and district-wide emails addressing common issues for the group of Store Managers. Grierson often left a list or document for Wachenschwanz, in which he answered questions she had asked him, left instructions for complying with Dollar General policies, and suggestions for store presentation and merchandising. Wachenschwanz was responsible for implementing those practices in the Store.

Dollar General prescribes numerous duties to its Store Managers, which Wachenschwanz regularly preformed. Those duties included, but were not limited to: recruiting, selecting, and retaining qualified employees; ensuring the store was properly staffed; training employees and conducting performance evaluations; identifying areas for appropriate solutions or counseling, up to and including termination; making recommendations for employee promotions; ensuring the financial integrity of the store through strict cashier accountability, key control, and adherence to stated company security practices and cash control procedures; and communicating performance, conduct, and safety expectations regularly. Wachenschwanz handled the Store's inventory, making sure that the store had the proper quantities of merchandise every week, handling the invoice billing, and telling vendors to change the mix of merchandise if she thought it was in the Store's best interest.

Wachenschwanz was responsible for ensuring that the store was properly opened and closed each day. She was also in charge of managing the Store's controllable expenses, including its labor budget. Wachenschwanz reviewed store reports and prepared store paperwork on a frequent basis. She was responsible for trying to control "shrink,"[2] which she did by monitoring cashiers, reviewing store reports, ensuring the store was properly stocked and items pulled forward, watching customers and the store's closed circuit television, and training

---

[2] Shrink is the term used for unaccounted for losses, often the result of shoplifting.

her employees to protect the store's assets with a similar level of care.  Wachenschwanz was the only store employee with a key to the back door, which also helped protect against shrink.

Wachenschwanz estimates that she worked an average of 50 hours per week.  As Store Manager, Wachenschwanz earned a salary of approximately $680.00 per week, and was eligble for bonuses based on the Store's performance in particular areas.  No other employees were eligble to earn bonuses.  The ASM, the employee immediately under Wachenschwanz, earned $8.85 to $9.15 per hour.  The LSA, who ranked below both Wachenschwanz and the ASM, earned $8.30 per hour.  Wachenschwanz's LSA regularly worked 40 hours per week.

*B. Procedural Background*

Plaintiff filed her Complaint on November 8, 2012.  (Doc. 2).  On November 15, 2012, Plaintiff filed an Amended Complaint, alleging that Defendant violated Ohio Revised Code § 4111.03 by failing to pay Plaintiff the proper overtime wage for hours worked in excess of 40 hours per week.  (Doc. 8).  Defendant filed its Motion for Summary Judgment on July 30, 2013. (Doc. 30).  On October 15, 2013, Defendant filed its Objections and Motion to Strike the Declaration of Patsy Wachenschwanz Offered by Plaintiff in Support of Her Opposition to Defendant's Motion for Summary Judgment.  (Doc. 58).

This matter has been fully briefed, and is, therefore, ripe for review.

**III. STANDARD OF REVIEW**

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.  R. Civ.  P.  56(c).  A fact is material if proof of that fact would establish one of the elements of a claim and would affect the application of

4

governing law to the rights of the parties.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.

1984) (citing *Johnson v. Soulis, Wyo.*, 542 P.2d 867, 872 (1975)).

      A movant for summary judgment meets its initial burden "by 'showing' – that is,

pointing out to the district court – that there is an absence of evidence to support the nonmoving

party's case." *Dixon v. Anderson*, 928 F.2d 212, 216 n. 5 (6th Cir. 1991) (citing *Celotex Corp. v.

Catrett*, 477 U.S. 317, 324-25 (1986)). At that point, the non-movant must set forth specific facts

showing that there is a genuine issue for trial.  *Id.* (quoting Fed.R.Civ.P. 56(e); *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). It is not, however, the role of the trial court to

"resolve factual disputes by weighing conflicting evidence because it is the jury's role to assess

the probative value of the evidence." *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227,

230 (6th Cir. 1990) (citing *Stone v. William Beaumont Hosp.,* 782 F.2d 609, 615 n. 5 (6th Cir.

1986); *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980)). All evidence and

reasonable inferences must be viewed in the light most favorable to the party opposing the

motion. *Pucci*, 628 F.3d at 759 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986)).

## IV. LAW & ANALYSIS

### A.  Defendant's Motion to Strike

      As an initial matter, Defendant moves the Court to strike portions of Plaintiff's

Declaration that was offered by Plaintiff in support of her Opposition to Defendant's Motion for

Summary Judgment.  (*Defendant's Motion to Strike*, Doc. 58; *Plaintiff's Declaration*, Doc. 34).

Defendant argues that all or part of Plaintiff's Declaration should be struck from the record

because it directly contradicts her sworn deposition and testimony, as well as because it is

inadmissible under Federal Rules of Evidence 602 and 802, and thereby violates Federal Rule of

Civil Procedure 56(c) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Defendant primarily argues that significant portions of Plaintiff's Declaration conflicts with her earlier sworn testimony, and thus should be struck.  In such situations, "[t]he rule…is that a party opposing summary judgment with an affidavit that contradicts her earlier deposition must explain why she disagrees with herself."  *Powell-Pickett v. A.K. Steel Corp.*, 12-CV-4424, 2013 WL 6231743, at *4 (6th Cir. Dec. 2, 2013).  Furthermore, the party who has submitted the contradictory testimony must provide a convincing explanation of the conflicting evidence.  *Id.* In other words, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement…without explaining the contradiction or attempting to resolve the disparity."  *Phillips v. Tradesmen Int'l, Inc.*, 1:05CV485, 2006 WL 2849779 (S.D. Ohio Sept. 29, 2006) (quoting *Aerel, S.R.L. v. PCC Airfoils, L.L.C.,* 448 F.3d 899, 907-08 (6th Cir. 2006) (internal citations omitted)).

The Sixth Circuit has set forth a test for a district court to determine whether a post-deposition affidavit is admissible.  First, the court must "determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony."  *Aerel*, 448 F.3d at 908-09.  If the affidavit is directly contradictory, it "should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction."  *Id.*  Conversely, if the affidavit is not directly contradictory, the court "should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'" *Id.* (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).  The Sixth Circuit has approved a list of nonexhaustive factors, originally set forth in *Franks*, that the court may

consider when determining whether a party attempted to create a sham issue of fact.  *See Giles v. University of Toledo*, 241 F.R.D. 466, 473 (N.D. Ohio 2007).  Those factors include, but are not limited to:

> whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain.

*Id.* at 909 (quoting *Franks*, 796 F.2d at 1237).

Defendants specifically object to eleven assertions in Plaintiff's Declaration.  None of the Plaintiff's Declaration assertions is directly contradictory to her prior sworn testimony; some of the statements at issue, however, while not directly contradictory, do rise to the level of creating a sham issue of fact.

Assertions 6 and 7 concern Plaintiff's day-to-day operation of the Store. Wachenschwanz indicates that she did not have discretion to make her own decisions about the Store, and states that the DM provided her with specific directives, from which she was not permitted to stray.  (Doc. 34, ¶ 6, ¶ 7).  During her deposition, however, Plaintiff agreed that she was the person in charge of the Store, which included making most of the key decisions for making her store profitable:

> Defendant's Attorney: Okay. And would you agree under both [District Managers] you were the person running the store?
> Wachenschwanz: Yes.
> Defendant's Attorney: And that's not to say that your supervisor didn't have input into the running of your store, but for the most part on the key decisions that you needed to make the store profitable you were the one making those decisions; would you agree?
> Wachenschwanz: Yes.

(*Deposition of Patsy Wachenschwanz*, Doc. 30-3 at 143).  Plaintiff has offered no evidence to indicate that the differences between her deposition testimony and the statements in her Declaration stem from a lack of access to pertinent information during her deposition. (*Plaintiff's Brief in Opposition*, Doc. 67 at 8; *see Franks*, 796 F.2d at 1237).   Furthermore, Plaintiff did not demonstrate that her Declaration attempts to explain away confusion regarding this testimony.  (Doc. 67 at 8; *see Franks*, 796 F.2d at 1237).  Assertions 6 and 7, therefore, create a sham issue of fact.

Next, in assertion 10, Plaintiff states that she generally could not hire or terminate employees without approval from her DM.  (Doc. 34, ¶ 10).  That statement, however, does not align with her deposition testimony, in which she discussed her experience with terminating prior employees, as well as hiring employees.  (Doc. 30-3 at 163-65, 201-204, 223-24).  Though the Court does not find that all of assertion 10 rises to the necessary level, the phrase, "I generally could not hire or terminate without my district manager's approval," creates a sham fact issue. (Doc. 34, ¶ 10).  Again, Plaintiff has offered no argument as to why her deposition testimony differs from the statements in her Declaration, thereby failing to offer any justification for the conflicting claims.  (Doc. 67 at 9; *see Franks*, 796 F.2d at 1237).  As such, assertion 10, in part, creates a sham issue of fact.

The final statement at issue, assertion 14, concerns Plaintiff's performance of managerial versus non-managerial duties.  Plaintiff states: "While I was performing non-managerial duties, I would not perform managerial duties at the same time."  (Doc. 34, ¶ 14).  That statement gives a distinctly different impression of Plaintiff's duties than Plaintiff communicated during her deposition testimony.  (Doc. 30-3 at 208-12).  Like the statements reviewed above, Plaintiff has failed to demonstrate that she did not have access to pertinent information during her deposition,

nor that Declaration attempts to explain away confusion present in her deposition testimony. (Doc. 67 at 9-10; *see Franks*, 796 F.2d at 1237).  Though assertions 6, 7, 10, and 14 are not directly contradictory of Plaintiff's deposition testimony, an application of the *Franks* factors indicates that each assertion creates sham fact issues.  The Court, therefore, will strike assertions 6, 7, and 14 in whole, and assertion 10 in part.

The remaining contradictory statements at issue, assertions 9, and 12, will not be struck. These statements, while in tension with Plaintiff's earlier deposition testimony, do not rise to the level of creating a sham issue of fact that requires that they be struck.  Nevertheless, at the summary judgment stage, affidavits which are entirely self-serving cannot, alone, create an issue of fact sufficient to survive summary judgment.  *Wolfe v. Vill. of Brice, Ohio*, 37 F.Supp.2d 1021, 1026 (S.D. Ohio 1999).  The Court will consider these assertions, therefore, in conjunction with other permissible evidence.

Finally, Defendant suggests that several passages of Plaintiff's Declaration violate Federal Rules of Evidence 602 and 802, which require that testimony be based on personal knowledge, and prohibit the introduction of hearsay statements.  While in certain cases, declarations containing arguably speculative statements, intermixed with admissible evidence, must be struck, *Cardiovascular and Thoracic Surgeons, Inc. v. St. Elizabeth Medical Center, Inc.*, 10-CV-846, 2012 WL 3962791, at *2-4, Plaintiff's Declaration here does not rise to the level necessary to demand that the offending document be excised.  The statements at issue are based on Plaintiff's personal knowledge, which cannot, under Fed. R. Civ. P. 56, simply be presumed to be inadequate.  *See e.g., Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 956 (S.D. Ohio 2000) (stating that personal knowledge may be inferred from documents such as affidavits).  Rather, the Court is empowered to review those portions of

Plaintiff's Declaration that have been retained, and base its judgments only upon evidence that is properly considered under Fed. R. Civ. P. 56.  Accordingly, remaining assertions 4, 5, 8, 10 in part, 13, and 15 will not be struck.

For the reasons set forth above, Defendant's Objections and Motion to Strike the Declaration of Patsy Wachenschwanz Offered by Plaintiff in Support of Her Opposition to Defendant's Motion for Summary Judgment is **GRANTED** in part, and **DENIED** in part.


### B.  Defendant's Motion for Summary Judgment

Turning now to Defendant's Motion for Summary Judgment, Defendants argue that Wachenschwanz's case should be dismissed because she was exempt from overtime under the "executive exemption" of the Fair Labor Standards Act ("FLSA"), and is, in turn, exempt from overtime under Ohio state law and the FLSA.  (Doc. 30).

Plaintiff brings her claim under O.R.C. § 4111.03.  Though she does not raise a claim under federal law, O.R.C. § 4111.03 expressly incorporates the FLSA: "An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of ... the 'Fair Labor Standards Act of 1938.'"  O.R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1).  An employer may assert a plaintiff's exempt status under the FLSA, but it is "an affirmative defense on which the employer has the burden of proof."  *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007) (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97 (1974)).  The exemptions "'are to be narrowly construed against the employers seeking to assert them.'"  *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846-47 (6th Cir. 2012).  The employer has the burden of

establishing the affirmative defense by a preponderance of the evidence, which is only satisfied if the employer provides "clear and affirmative evidence that the employee meets every requirement of the exemption." *Id.* (citing *Speedway*, 506 F.3d at 501).  The employer claiming the FLSA exemption, however, "does not bear any heightened evidentiary standard." *Speedway*, 506 F.3d at 501; *see also Renfro v. Indiana Michigan Power Co.,* 497 F.3d 573, 576 (6th Cir. 2007).

Under the FLSA, employees who work in a "bona fide executive, administrative, or professional capacity" are exempt from the overtime rate applicable to other classifications of employees.  29 U.S.C. § 213(a)(1).  There are four requirements that an employee must meet in order to be considered an executive employee, and thereby subject to the executive exemption:

> The term "employee employed in a bona fide executive capacity"…shall mean any employee: 1) compensated on a salary basis at a rate not less than $455 per week; 2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; 3) who customarily and regularly directs the work of two or more other employees; and 4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).  Defendant bears the burden of establishing each element of the executive exemption.  *Speedway*, 506 F.3d at 505, n. 6 (citing *Renfro v. Ind. Mich. Power Co.,* 370 F.3d 512, 515 (6th Cir. 2004)).

Prior to the August 2004 amendment of the FLSA, an employer raising the affirmative defense of an executive exemption against an employee needed to show: 1) the employee earned at least $250 per week; 2) the employee's primary duty consisted of the management of the enterprise; and 3) the employee customarily and regularly directed the work or two or more

employees.  *See Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d, 725, 739 (S.D. Ohio 2006) (citing 29 C.F.R. § 541.1 (2003)).  The pre-2004 executive exemption test is known as the "short test."  *Id.*  For cases concerning claims that span a timeline prior to August 2004 and beyond August 2004, the Sixth Circuit has decided that both the "short test" and the current test must be applied.

In *Baden-Winterwood v. Life Time Fitness*, the Court held that the proper application of the differing tests, rather than improperly applying the current test retroactively, was to apply the "short test" to claims arising before August 24, 2004, and the current test to claims arising after August 24, 2004.  566 F. 3d 618, 628-29 (6th Cir. 2009); *see also In re Family Dollar FLSA Litigation* 637 F.3d 508, 513 (4th Cir. 2011) (though plaintiff's claims covered the period from 1996 to October 2004, and were therefore governed by both the pre-2004 and post-2004 regulations, the application of the different regulations was "not material to the outcome of the case.").  The "short test" is encapsulated in the requirements of the current test, and therefore, this Court will address the primary duty requirement and direction of employee requirement concurrently under the "short test" and the current test.

Defendant argues, and Plaintiff concedes, that there is no dispute that Plaintiff met the salary threshold required under the executive exemption.  The remaining three elements, however, are contested, and will be addressed individually below.

### 1.  *Primary Duty Test*

An employee qualifies as exempt when her primary duty is the performance of exempt work. 29 C.F.R. § 541.700(a).  For the employees work to be considered her primary duty, it must be "the principal, main, major, or most important duty that the employee performs."  *Id.*

Furthermore, "determination of a primary duty must be based on all the facts in a particular case, with major emphasis on the character of the employee's job as a whole." *Id.* Various factors may be considered, including, but not limited to:

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.* Time spent performing exempt work can be useful in determining whether exempt work is the primary duty of the employee, and employees who spend more than 50 percent of their time performing exempt work will likely satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). Time, however, is not the sole measure under this requirement, and an employee who spends less than 50 percent of her time performing exempt duties may meet the primary duty requirement if other factors lend themselves to that conclusion. *Id.*; *see also Speedway*, 506 F.3d at 504-05.

In order to establish that Plaintiff was an executive based on the primary duty test, Defendant "needs to carry its burden only on the primary duty element as a whole, not on each individual factor relevant to that inquiry." *Id.* at 505, n. 6. To consider properly both parties' arguments on the primary duty requirement, the Court must address each factor individually.

### a. Mangerial Duties verus Non-Managerial Duties

Defendant argues that Wachenschwanz's managerial duties were more important than her non-managerial duties. It points to Wachenschwanz's statement that the Store would not have been able to run without someone performing managerial duties, and she was the person performing those duties. Defendant claims that it would be impossible to find that

Wachenschwanz's managerial duties were less important than her non-mangerial duties, especially when considering her managerial duties in the aggregate.  According to Defendant, Plaintiff was responsible for ensuring that the Store ran smoothly, which included assigning tasks to her employees.  Defendant argues that Wachenschwanz's choice to perform certain non-managerial tasks, simply because she believed doing so was in the Store's best interest, does not take away from her duties as manager.  Finally, Defendant states that the Court should consider the importance of Wachenschwanz's managerial duties from Dollar General's perspective.

Plaintiff claims that Defendant's argument is disproven by her belief that there were three duties most important to the Store's operation, only one of which was managerial.  Furthermore, that managerial duty was not one, according to Plaintiff, that she had the discretion to change.  Plaintiff argues that Defendant's business model, in which Plaintiff's bonuses were tied directly to the performance of the Store, essentially forced her into performing non-managerial duties under the guise of acting as the manager.  Plaintiff proffers that she was unable to get the assistance she needed from hourly employees to protect against Store failure, so she performed the non-managerial work herself.

In *Thomas v. Speedway SuperAmerica, LLC*, the Court considered whether a Speedway gas station manager was exempt under the executive exemption.  *Id.*  Ultimately finding that the gas station manager was exempt, the Court analyzed Thomas's status under each factor.  *Id.* at 505-09.  When considering the managerial duties versus non-managerial duties prong under the primary duty requirement, the Court noted that Thomas regularly performed non-managerial duties such as sweeping floors, stocking merchandise, and cleaning bathrooms, but also had managerial duties like assigning the weekly work schedule, hiring employees, and training employees.  *Id.* at 505-06.  The Court stated that Thomas's managerial duties were "much more

important to Speedway's success than her non-managerial duties," because her Speedway would have failed to function without Thomas's performance of those essential managerial tasks. *Id.*

When weighing Plaintiff's managerial duties against her non-managerial duties, "courts must compare the importance of the plaintiff's managerial duties with the importance of her non-managerial duties, keeping in mind the end goal of achieving the overall success of the company." *Speedway*, 506 F.3d at 505. Defendant points to Plaintiff's overall duties, arguing that, though Plaintiff chose to perform some non-managerial duties, doing so does not lessen the importance of her various managerial duties. Conversely, Plaintiff argues that, out of what she believed to be the three most important duties, two were non-managerial and one was managerial, thereby indicating what was more important. Similar to *Speedway*, Plaintiff's store would not have functioned without her performance of certain fundamental managerial tasks. As such, Plaintiff's managerial duties, though often coupled with non-managerial duties, are markedly more important than her non-managerial duties. Therefore, Defendant has established primary duty under this part of the requirement.


### b. Time Spent Performing Exempt Work

Defendant argues that Wachenschwanz, in admitting that she spent the majority of her time managing, confirmed that she spent the majority of her time performing exempt work. Defendant proffers that Wachenschwanz regularly performed concurrent duties. For example, even if she was engaged in some form of manual labor in the Store, she was simultaneously monitoring for theft, and keeping an eye on her employees' performance and interaction with customers. Specifically, Defendant points to Plaintiff's acknowledgment that she was in charge of the Store 100 percent of the time. Defendant states that Plaintiff regularly performed

managerial duties, even if she was also performing a non-managerial duty. Furthermore, Defendant notes that Plaintiff conceded that she spent 40 percent of her time in the Store performing exclusively managerial functions. That 40 percent, however, is simply a base number, predicated on Plaintiff's performance of concurrent duties.

Plaintiff fails to address this element outright, but frequently discusses the amount of time she spent performing non-managerial duties. Plaintiff argues that she was responsible for opening the Store, as frequently as six days per week, during which time she performed almost entirely non-exempt work. Furthermore, when she opened the Store, she was the only employee present, so she had no choice but to perform non-exempt work. Plaintiff continually argues that her admission of concurrently performing managerial and non-managerial work does not weigh in favor of time spent performing exempt duties, but rather, demonstrates the exact opposite.

A plaintiff need not spend 50 percent of her time performing managerial duties to meet this element of the primary duty test. *See McKinney v. United Stor-All Centers, LLC*, 656 F. Supp. 2d 114, 124-25 (D.D.C. 2009). Furthermore, in situations where the plaintiff spends less than 50 percent of her time carrying out managerial duties, management may still be her primary duty "if the other pertinent [factors] support such a conclusion." *Gonzalez v. Dolgencorp, Inc.*, 10-CV-392, 2011 WL 6009860, at *5 (citing 29 C.F.R. § 541.103 (2003)). Here, Defendant suggests that the common overlap between Plaintiff's non-managerial and managerial duties is sufficient to demonstrate that she spent most of her time performing exempt work. Plaintiff, however, argues that her activities indicate that she actually spent more time performing non-exempt activities. Defendant has demonstrated that Plaintiff spent at least 40 percent of her time in the Store performing managerial duties. Therefore, this factor does not conclusively weigh in favor of Defendant. Time spent, however, should not be given "undue weight," *Speedway*, 506

16

F.3d at 504, and, read together with the other factors, *see supra*, Section IV.B(1)(b), and *infra*

Section IV.B(1)(c) and IV.B(1)(d), the Court finds that her primary duty was managerial.

c. Relative Freedom from Direct Supervision

Defendant states that Wachenschwanz was relatively free from direct supervision.

Wachenschwanz testified that her DM contacted her throughout the week, totaling around five to

six hours, which included weekly visits lasting three to four hours, short phone calls, district-

wide phone calls, and emails. Defendant argues that the frequency and quantity with which the

DM contacted Wachenschwanz does not demonstrate any significant amount of direct

supervision in her day-to-day operations of the Store.  Additionally, Defendant notes that

Wachenschwanz admitted that she was not required to seek the permission of her DM before

taking action in the Store, the DM did not interfere with day-to-day managerial duties, which

allowed Wachenschwanz to make the key decisions in her Store on a daily basis.

Plaintiff argues that she received an undue amount of supervision from her DM, with a

frequency she found to be excessive.  Plaintiff alleges that she was stripped of much of her non-

pertinent discretion, based on various mandates from the DM.  According to Plaintiff, the DM

did not simply visit the store, or check-in through his phone calls; rather, he contacted her as a

means of providing sets of instructions that Plaintiff was to follow.

A plaintiff need not be absolutely free from supervision in order for a defendant to

demonstrate that she was relatively free from supervision.  *Speedway*, 506 F.3d at 507.  In

*Speedway*, the Court found that biweekly store visits, frequent phone calls and emails, and

constantly availability did not detract from the plaintiff's daily freedom from "over-the-shoulder

oversight on a day-to-day basis."  *Id.* at 507-08.  Plaintiff offers no evidence in support of her

argument that her DM prevented her from being relatively free from supervision.  As this Court noted *supra*, Section IV.A., Plaintiff's evidentiary support for this argument relies almost entirely on the relevant statements in her Declaration, particularly assertions 6 and 7, both of which have been struck.  Viewing the remaining evidence in the light most favorable to the Plaintiff, there are not issues of material fact that remain as to whether Plaintiff was relatively free from supervision, a finding that is further supported by Plaintiff's various admissions that she was in charge of the day-to-day operations of her Store.  Therefore, Defendant has established that Plaintiff has met this prong under the primary duty requirement.

### d. Wachenschwanz's Salary versus Other Employees' Salaries Received for Non-Exempt Work

Defendant states that Wachenschwanz earned significantly more than her non-salaried co-workers. According to Defendants, Dollar General paid its Store Managers significantly more than the other, hourly store employees.  Defendants claim that Wachenschwanz was paid more not only in absolute terms, but also through Wachenschwanz's ability to enhance her compensation through store profitability.  Wachenschwanz earned a weekly salary of $680.88, while her immediate subordinate, the ASM, earned $8.85 to $9.15 per hour,[3] which is a difference of approximately 47 percent.  Defendant also points to Plaintiff's potential bonus earnings as further evidence of the vast salary difference between Plaintiff and the other Store employees. Defendant argues that Wachenschwanz was a "profit center,"[4] because her evaluations and bonus criteria were directly dependent on the Store's success and profitability. Moreover, Defendant states that Wachenschwanz influenced the Store's profitability through

---

[3] At a rate of 40 hours per week, that would amount to between $354 and $366 each week.
[4] A manager may be considered a profit center if she "had the ability to influence the amount of her compensation." *In re Family Dollar*, 637 F.3d at 517.

various management decisions, adding that the potential Store profits' impact on Plaintiff's compensation weighs in favor of granting this element for Defendant.

Plaintiff argues that Defendant has failed to demonstrate properly why it paid Plaintiff more than the Store's hourly associates. Plaintiff questions Defendant's motive behind her salary, citing Wachenschwanz's responsibility for opening and closing the Store on numerous occasions throughout her employment as an example of Plaintiff being made to do a non-managerial task while being paid a manager's salary. Plaintiff seems to claim that Defendant could not have decided to compensate Wachenschwanz on a salary basis for performing non-exempt work, given its emphasis on the importance of managerial duties over non-managerial duties.

In evaluating this element of the primary duty test, courts have considered whether the manager earned more than non-managerial employees, and whether the manager had the ability to influence the amount of compensation she earned. *In re Family Dollar*, 637 F.3d at 517-18; *see also Gonzalez*, 10-CV-392, 2011 WL 6009860, at *8 (finding that plaintiff's salary and potential bonus earnings, among other factors, weighed in favor of establishing the fourth element under primary duty for an executive exemption). As to the first part, the parties have agreed that Plaintiff earned more than the hourly employees in the Store. Regarding the second element, Defendant has demonstrated by a preponderance of the evidence that Wachenschwanz had the ability to influence the amount of compensation she earned. Since there are no issues of material fact under this element, it weighs in favor of Defendant. As such, Defendant has established, by a preponderance of the evidence, that Plaintiff's primary duty was management.

2.  *Plaintiff Customarily and Regularly Directs the Work of Two or More Other Employees*

The third element under the executive exemption is whether the plaintiff customarily and regularly directed the work of two or more employees.  Customarily and regularly means, "a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701.  Two or more employees means "two full-time employees, or their equivalent…[which could be] [o]ne full time and two half-time employees…[or] four half-time employees."  29 C.F.R. § 541.104(a).

Defendant states that one of Plaintiff's primary employment duties was to supervise all Store employees.  Wachenschwanz was responsible for supervising two full-time employees and four part-time employees.  Plaintiff fails to address this in any substantive manner, only citing it as something she considers to be an issue of material fact.  There is no issue of material fact as to this element of the executive exemption, and this element of the executive exemption, therefore, weighs in Defendant's favor.

3.  *Plaintiff's Authority to Hire, Fire, or Make Suggestions as to the Status of Other Employees*

The final element at issue under the executive exemption is Plaintiff's authority with regard to the hiring and firing of other employees, as well as the ability for Plaintiff to make decisions that affect another employee's status level.  In deciding whether an employee's suggestions and recommendations hold a particular weight, the Court considers factors such as: "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which suggestions and recommendations are relied upon."  29 C.F.R. § 541.105. The suggestions must pertain to an employee whom the manager regularly directs.  *Id.*

Furthermore, those recommendations and suggestions may still be considered to hold a "'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status." *Id.*

Defendant argues that Plaintiff fits squarely within this element. Defendant points to admissions by Plaintiff that she could hire Sales Associates, make recommendations to her DM regarding promotions to ASM and LSA positions. Plaintiff, however, disagrees, citing this element as another issue of material fact.[5] Construing the facts in favor of Plaintiff, this Court finds that there is no issue of material fact as to this element of the executive exemption. This element, therefore, weighs in favor of Defendant.


## V. CONCLUSION

Defendant established properly each out of the four elements necessary under the executive exemption. Defendants' Motion for Summary Judgment, is, therefore, **GRANTED**. This case is hereby DISMISSED.

**IT IS SO ORDERED.**


   **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: March 7, 2014**

---

[5] This Court previously determined that Plaintiff stated that she had hired and terminated employees, and the specific testimony found in her Declaration, in which she claims that never happened, was struck. *See supra*, Section IV.A.

21